MARGARET A. MOESER
Chief, Money Laundering,
Narcotics and Forfeiture Section
U.S. Department of Justice
Adrienne E. Rosen
Madison M. Albrecht
Trial Attorneys
1400 New York Ave NW
Washington, DC 20005
Tel: (202) 616-2690
adrienne.rosen@usdoj.gov

ALINA HABBA
Acting United States Attorney
Special Attorney
Jordan M. Anger
Robert Frazer
Assistant United States Attorneys
970 Broad Street, Suite 700
Newark, New Jersey 07102
Tel. 973-645-2829
jordan.anger@usdoj.gov

**ELECTRONICALLY FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 2:25-cr-501 |
| | : | |
| CHRISTOPHER CASTELLUZZO | : | |
| | : | |

**UNITED STATES' AMENDED[1] MOTION FOR JUDICIAL INQUIRY INTO POTENTIAL CONFLICT OF INTEREST AND REQUEST FOR HEARING**

The United States of America, by and through its undersigned counsel, hereby moves this

Court to conduct an inquiry regarding potential conflicts of interest arising from the continued

representation of defendant, Christopher Castelluzzo ("Castelluzzo"), by attorneys Peter Neil Katz,

---

[1] This replaces the filing at ECF 20.  The only difference is the attached exhibits.

Esq. and Leslie M. Sammis, Esq.  Specifically, the government respectfully requests that the Court hold a hearing to determine whether such representation can continue given the potential attorney fee arrangements in Castelluzzo's criminal case as well as in the related civil forfeiture case.

Based upon communications with defense counsel, the government believes that attorneys Katz and Sammis may be representing Castelluzzo on a contingency basis in the related civil asset forfeiture matter, and due to the overlapping facts and legal issues, that representation is inextricably intertwined with counsel's representation in this criminal case. The government further believes that their representation in that related civil matter creates a personal financial interest for defense counsel that may create a conflict of interest in their representation of Castelluzzo in the criminal case. Additionally, in light of the potential conflict arising from the contingency fee arrangement in the civil case and Defendant's prior application for and appointment of CJA counsel in this criminal case, the government seeks an inquiry into the fee arrangement between Defendant and his counsel in the criminal case as well.

Accordingly, to protect the interests of all parties—including the interests of the government and the defendant, as well as the Court—the Government seeks: (1) a judicial inquiry into the attorney fee arrangements to determine whether a conflict exists; (2) if a conflict exists, a judicial determination as to whether such conflict is waivable; and (3) if such conflict is waivable, the steps necessary to ensure that such waiver is properly obtained.

## I.    RELEVANT BACKGROUND

### A.  <u>Castelluzzo's Underlying Conduct</u>

In August 2013, Castelluzzo was indicted in the District of New Jersey for conspiring to import and importing methylone, a Schedule 1 controlled substance, into the United States. ECF No. 1, ¶ 2; *see also United States v. Castelluzzo,* 3:13-cr-360.   During the next two years, while

on pre-trial release, Castelluzzo and co-conspirators continued the criminal drug enterprise by selling illegal narcotics on darknet marketplaces in exchange for cryptocurrency, most commonly Bitcoin. *See* ECF No. 1, ¶¶ 2-8. Sales through a Silk Road account expanded into larger distributions with up to 50 or 60 packages of methylone and cocaine sold and shipped to customers on the darknet marketplaces each day. *See id.*

In July 2014, Castelluzzo, with the aid of a co-conspirator, purchased approximately 30,000 units of Ethereum (ETH) with the proceeds of illegal drug trafficking. *See* ECF No. 8, ¶ 3. The ETH was purchased using 15 units of Bitcoin, which at the time were valued at approximately $600 each, or $9,000 total. *Id.*

Thereafter, Castelluzzo and co-conspirators agreed to engage in transactions through cryptocurrency exchanges while making misrepresentations to conceal the nature, location, and source of the funds to avoid drawing the attention of banks, exchanges, and law enforcement to the illegal proceeds, and to avoid paying taxes. *Id.* at ¶¶ 2-3.

Following Castelluzzo and another co-conspirator's conviction and incarceration in 2015, a second co-conspirator was hired to manage the cryptocurrency. *See* ECF No. 8, ¶ 3. As part of the conspiracy, in return for accepting the risk of storing and managing transactions involving illegal drug proceeds, the co-conspirator was offered 2,000 ETH of Castelluzzo's 30,000 ETH as payment for helping to launder the cryptocurrency. *Id.* As of March 2021, the 2,000 ETH was worth approximately $3.69 million. *Id.*

In July 2022, law enforcement executed a search warrant at the residence of the Colorado conspirator and seized electronic wallets containing the cryptocurrency, including approximately 30,000 ETH, which at the time was valued at approximately $31 million. *See* ECF No. 1, ¶ 30; *see also United States v. Approximately 30,006 Ether, et al.*, 2:23-CV-21819, ECF No. 1 at ¶ 87. The

value of the ETH increased to approximately $53 million as of November 2023. ECF No. 1, ¶ 4. As of November 30, 2025, the value of the 30,000 ETH was over $82 million.[2]

**B.  Civil Forfeiture Action**

On November 2, 2023, the United States filed a civil complaint, *United States v. Approximately 30,006 Ether, et al.*, seeking the forfeiture of the following assets: approximately 30,006 Ether; approximately 153,925.11 Cronos; approximately 244.23 Binance Coin; approximately 764.19 Solana; approximately 23,848.96 Cardano; approximately 32,232.24 Algorand; approximately 299.48 Avalanche; approximately 0.49 Bitcoin; approximately 1,150.71 Polkadot; approximately 1,589.32 Chainlink; approximately 17,208.48 Polygon; approximately 393 TrueUSD; and approximately 2,466.36 Uniswap. *See United States v. Approximately 30,006 Ether, et al.*, 2:23-cv-21819 (D.N.J. 2023) (hereinafter, the "civil case").

Christopher Castelluzzo filed a Verified Claim and Answer in the civil case. 2:23-cv-21819, ECF Nos. 70, 79. No other claims were filed. Castelluzzo initially appeared *pro se*, filing a response to the Complaint and a Motion to Dismiss, before retaining attorney Kevin J. Begley in March 2024. 2:23-cv-21819, ECF No. 21. In December 2024, Castelluzzo sent a letter and filed a *pro se* motion to remove Mr. Begley from the civil case and continued to proceed *pro se* in the matter. 2:23-cv-21819, ECF Nos. 33, 36.

On February 10, 2025, attorney Douglas V. Sanchez (Cruser, Mitchell, Novitz, Sanchez, Gaston, & Zimet, LLP) filed a notice of appearance to represent Castelluzzo in the civil case. 2:23-cv-21819, ECF No. 69.

---

[2] *See* Coin Base, *Ethereum Price,* https://www.coinbase.com/price/ethereum (last visited Dec. 1, 2025) (Since 2014, the value of ETH has grown and fluctuated from the original value to a high of approximately $4,955 per ETH or over $148 million in August 2025).

On February 11, 2025, Mr. Sanchez filed a motion to admit Florida attorneys Leslie M. Sammis and Jason D. Sammis (Sammis Law Firm, P.A.) *pro hac vice* to appear as co-counsel for Castelluzzo in the civil case, which was subsequently granted by Magistrate Judge Jose R. Almonte. 2:23-cv-21819, ECF Nos. 74-75. On May 30, 2025, attorney Travis M. Anderson (Cruser, Mitchell, Novitz, Sanchez, Gaston, & Zimet, LLP) filed a notice of appearance to represent Castelluzzo as co-counsel on the civil case. 2:23-cv-21819, ECF No. 89.

On June 30, 2025, the United States filed a motion to stay the civil case pending resolution of the related criminal case, *United States v. Castelluzzo*, 2:25-cr-501. 2:23-cv-21819, ECF No. 92. On August 6, 2025, Magistrate Judge Jose R. Almonte ordered that discovery in the civil case be stayed pending resolution of the motion and adjourned the previously scheduled conference in the matter. *See* 2:23-cv-21819, ECF No. 100.

Subsequently, on August 26, 2025, attorney Peter Neil Katz filed a notice of appearance to represent Castelluzzo in the civil case. 2:23-cv-21819, ECF No. 101.

**C. <u>Criminal Case</u>**

On June 27, 2025, a Criminal Complaint was sworn out in the District of New Jersey, charging Castelluzzo with conspiracy to commit money laundering in violation of Title 18 United States Code, Section 1956(h). ECF No. 1.

At his initial appearance on July 25, 2025, Castelluzzo completed and submitted a sworn Financial Affidavit stating that he had no income or assets. On the basis of those representations, Magistrate Judge Almonte appointed CJA attorney, Frederick Richard Dunne, III, to represent Castelluzzo in the criminal case. ECF No. 5. Mr. Dunne represented Castelluzzo through August 26, 2025, when New Jersey attorney Peter Katz filed a notice of appearance as counsel for Castelluzzo in the criminal case, terminating the appointment of Mr. Dunne. ECF No. 11.

On August 7, 2025, a federal grand jury sitting in the District of New Jersey returned an Indictment against Castelluzzo, charging him with one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). ECF No. 8. The criminal conduct charged in the Complaint and Indictment stems from Castelluzzo's conduct previously alleged in the Civil Forfeiture Action. *See* ECF Nos, 1, 8; 2:23-cv-21819, ECF No. 1.

On September 17, 2025, attorney Leslie M. Sammis filed a notice of appearance to represent Castelluzzo in the criminal case. ECF No. 15.

### D.  Representation by Ms. Sammis and Mr. Katz

Attorneys Leslie Sammis and Peter Katz have filed appearances to represent Castelluzzo in both the civil case and the criminal case. Ms. Sammis filed an appearance in the civil case on February 11, 2025, and subsequently joined the criminal case on September 17, 2025. *See* ECF No. 15; *United States v. Approximately 30,006 Ether, et al.*, 2:23-cv-21819, ECF Nos. 74-75. On August 26, 2025, Mr. Katz filed notices of appearance to represent Castelluzzo in both the criminal and civil cases. *See* ECF No. 11; *United States v. Approximately 30,006 Ether, et al.*, 2:23-cv-21819, ECF No. 101.

In October 2025, Assistant U.S. Attorneys Jordan M. Anger and Robert Frazer spoke with Mr. Katz to raise the issue of a potential conflict of interest that could occur if the attorneys were representing Castelluzzo in the civil case pursuant to a contingency fee agreement. On November 14, 2025, the government subsequently emailed Mr. Katz and Ms. Sammis to follow up on the prior call and inquire about their position on the issue. Both attorneys responded denying that there was a conflict. *See* Exhibits A-B. No information was provided regarding the specific fee arrangements in either case. *See id.* Ms. Sammis further stated that "[t]here is no rule that would

prevent the criminal defense attorney from also representing the client in the pending civil asset forfeiture case, even on a contingency fee basis in the civil asset forfeiture case." *See* Ex. A.

## II.     APPLICABLE LAW

The existence of a contingency fee arrangement between attorneys Katz and Sammis and defendant Castelluzzo in the related civil asset forfeiture matter would create an improper personal financial interest for those attorneys. That financial interest may create a conflict in their representation of Castelluzzo in this criminal matter, in violation of Castelluzzo's Sixth Amendment rights and New Jersey Rules of Professional Conduct, 1.5(d)(2) and 1.7(a)(2).

### A.  <u>Conflicts of Interest and the Sixth Amendment Right to Counsel</u>

Under the Sixth Amendment, a criminal defendant has a constitutional right to the effective assistance of counsel which includes the right to representation from competent, conflict-free counsel. *See Wheat v. United States*, 486 U.S. 153, 158 (1988); *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980). The Third Circuit has described these two correlative rights as "the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." *United States v. Moscony*, 927 F.2d 742, 748 (3d Cir. 1991) (quoting *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988)).

A defendant has the right to retain an attorney and "should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932). However, the resumption of representation by a defendant's counsel of choice is not absolute. *See United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004). The goal of the Sixth Amendment "is to guarantee an effective advocate for each criminal defendant rather than to ensure that defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. An actual conflict of

interest occurs "during the course of the representation, [when] the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993) (quoting *Cuyler*, 446 U.S. at 356 n.3). This "presumption in favor of a defendant's counsel of choice 'may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.'" *United States v. Self*, 681 F.3d 190, 198 (3d Cir. 2012) (quoting *Wheat*, 486 U.S. at 164).

Even in cases involving retained, rather than appointed, counsel, "the potential for serious conflicts is a consideration of judicial administration that can outweigh a defendant's right to counsel of choice." *United States v. Voigt*, 89 F.3d 1050, 1075 (3d Cir. 1996). The trial court has an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160. Thus, the Court should not allow participation by a defense attorney who suffers from a conflict of interest. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151-52 (2006). If a defendant's representation was tainted by a conflict, his or her conviction may be vacated or reversed. This is true even when a defendant expresses a desire to waive the potential conflict. *Wheat*, 153 U.S. at 164. Indeed, courts have an interest in preserving scarce judicial resources by not presiding over a trial when a defendant may have a legal basis to appeal or collaterally attack the verdict based on an unresolved defense conflict. *See United States v. Briggs*, No. 23-CR-644, 2025 U.S. Dist. LEXIS 144061, at *9 (S.D.N.Y. July 28, 2025) ("Federal courts' independent interest in ensuring that criminal trials are ethical and fair, coupled with the potential for gamesmanship on the part of the defendant who waives a conflict only to later claim ineffective assistance, necessitates affording the district courts broad latitude in refusing conflict waivers.").

Any waiver of a conflict of interest posed by a defendant's attorney must be knowing, intelligent, and voluntary. *United States v. Fawkes*, 510 F. App'x 183, 187 (3d Cir. 2013); *see also Yeboah-Sefah v. Ficco*, 556 F.3d 53, 68 (1st Cir. 2009); *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir.1994); *United States v. Garcia*, 517 F.2d 272, 276-77 (5th Cir. 1975). In *United States v. Dolan,* the Third Circuit established that an inquiry into a defendant's waiver of their attorney's conflict of interest "should follow in substance, though not necessarily in precise form," the procedures previously adopted by the Fifth Circuit in *Garcia. United States v. Dolan*, 570 F.2d 1177, 1181 (3d Cir. 1978) (citing *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975)). A court should address the "defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest." *Id.*

> The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response [] that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. It is, of course, vital that the waiver be established by clear, unequivocal, and unambiguous language.

*Garcia*, 517 F.2d at 278 (internal citations omitted).

Some conflicts are so severe as to deprive a defendant of the right of effective assistance of counsel and therefore cannot be waived. *See United States v. Vaquero*, 997 F.2d 78, 90 (5th Cir. 1993). "The Third Circuit has declined to accept waivers of conflicts of interest be they actual or potential." *United States v. Cannistraro*, 794 F. Supp. 1313, 1318-19 (D.N.J. 1992) (citing *Moscony*, 927 F.2d at 742; *Government of Virgin Islands v. Zepp*, 748 F.2d 125 (3d Cir. 1984); *see also United States v. Flanagan*, 679 F.2d 1072 (3d Cir. 1982); *Dolan*, 570 F.2d at 1177). "Even if the current representation is free of actual conflict, disqualification is appropriate if potential

risk for conflict exists under the circumstances of the particular case." *United States v. Joyce*, 330 F. Supp. 2d 527, 529-30 (E.D. Pa. 2004) (quoting *Wheat*, 486 U.S. at 163 -164.) ("The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court."). Therefore, district courts are "allowed substantial latitude in refusing waivers of conflicts of interest where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial processes." *United States v. Elder*, 311 F. Supp. 3d 589, 595 (E.D.N.Y. 2018) (cleaned up).

### B.  Contingency Fee Arrangements

Courts have recognized that "[c]ontingent fees in criminal cases are generally considered improper and unethical." *Frank v. United States*, No. 11-20507-Civ-JORDAN, 2012 U.S. Dist. LEXIS 201003, at *47-48 (S.D. Fla. Jan. 23, 2012); *Martinez v. Kelly*, 2005 U.S. Dist. LEXIS 42952, at *28-29 (S.D.N.Y. Aug. 4, 2005) (quoting *Winkler*, 7 F.3d at 308) ("[A] criminal defense attorney's "acceptance of a contingency fee agreement for representing a criminal defendant is highly unethical and deserves the strongest condemnation,"); *see also Peyton v. Margiotti*, 398 Pa. 86, 90, 156 A.2d 865, 867 (Pa. 1959) ("In criminal cases the rule [against contingent fees] is stricter because of the danger of corrupting justice."); *Mittal v. United States*, 471 F. Supp. 2d 370, 378 (S.D.N.Y. 2006) ("[T]he fact that a lawyer is paid for the representation is not a basis for a conflict of interest claim in the absence of some other factor such as a contingent fee arrangement.").

Through the Local Civil and Criminal Rules of the United States District Court for the District of New Jersey, the Court has adopted the Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court. *See* Local Civil Rule 103.1(a), Judicial Ethics and Professional Responsibility. Under the New Jersey Rules of Professional

Conduct, Rules 1.5(d)(2) and 1.7(a)(2) are most applicable to the analysis considering the potential conflicts arising in through a contingency fee arrangement. *See* N.J. R. Prof. Conduct.

Pursuant to N.J. Rules of Professional Conduct, Rule 1.5(d)(2) – Fees, "[a] lawyer shall not enter into an arrangement for, charge, or collect . . . a contingent fee for representing a defendant in a criminal case." N.J. R. Prof. Conduct R. 1.5(d)(2) (2025). This rule similarly mirrors Rule 1.5(d)(2) of the American Bar Association Model Rules of Professional Conduct. Though the New Jersey rules do not have attached commentary, annotations pertaining to the related ABA Model Rule further explain that "[a] fee based upon acquittal creates a conflict of interest because it may tempt a defense lawyer to push for trial rather than a plea bargain, or to forego mitigating evidence if it could lead to conviction of a lesser-included offense." E. Bennett, Annot. Mod. R. Prof'l Conduct (8th Ed. 2015), p.98, Rule 1.5 Comment.

In a conflict-of-interest analysis, a court should "consider the ethical standards of the profession" to ensure that "legal proceedings appear fair to all who observe them." *See United States v. Cannistraro*, 794 F. Supp. 1313, 1318-19 (D.N.J. 1992). Additional factors that may be considered are "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001).

Beyond the general prohibition against contingency fees in a criminal case, the New Jersey Rules of Professional Conduct, Rule 1.7(a)(2) further prohibits a lawyer from representing a client if "there is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer." N.J. R. Prof. Conduct R. 1.7(a)(2) (2004). Likewise, the

11

"American Bar Association Model Code of Professional Responsibility demand[ed] that a lawyer 'shall not accept [or continue in] employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.'" *United States v. Speed Joyeros*, 204 F. Supp. 2d 412, 422 (E.D.N.Y. 2002) (referring to similar previous prohibitions under the ABA Model Code, DR 5-101(A)).

This conflict arises "when the defense attorney ... [is] required to make a choice [that may] advance[e] his own interests to the detriment of his client's interests." *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir.1988). This can occur when a client's interest is adverse to their attorney's pecuniary interests. *Frank v. United States*, No. 11-20507, 2012 U.S. Dist. LEXIS 201003, at *46- 47 (S.D. Fla. Jan. 23, 2012); *see also United States v. Marrera*, 768 F.2d 201, 207 (7th Cir. 1985) (attorney's interest in movie rights to client's story created potential conflict of interest). A conflict occurs when the criminal defendant's interest is pitted against their attorney's monetary interest through a contingency fee arrangement. *Winkler v. Keane*, 7 F.3d 304, 307-08 (2d Cir. 1993).

In *Winkler*, the court found that an actual conflict of interest existed due to the defense attorney's personal financial interest when a contingency fee arrangement provided the attorney a bonus for acquittal. *Id*. Because the attorney would receive an additional $25,000 if his client was acquitted, "trial counsel had a disincentive to seek a plea agreement, or to put forth mitigating defenses that would result in conviction of a lesser included offense". *Id.* at 308. Though the representation was ultimately not considered a *per se* conflict under the heightened, retrospective standard for ineffective assistance of counsel under *Strickland* and *Cuyler*, the Court recognized that contingency fees between defense counsel and defendant were "inappropriate and unethical" *Id.* The court explained that when the defendant's "interests were pitted against trial counsel's

12

monetary interest," . . . "[p]lainly the contingency fee agreement created an actual conflict of interest." *Id.* at 307-08.

The presence of a conflict of interest in a criminal case can likewise be imputed when there is a contingency fee arrangement in a related civil case. *See e.g., United States v. Briggs*, No. 23-cr-644, 2025 U.S. Dist. LEXIS 144061, at *4-5 (S.D.N.Y. July 28, 2025) (finding that an attorney with a contingency fee arrangement in a related civil lawsuit with a potential recovery of $95 million dollars gave the attorney a personal financial interest in the criminal case); *United States v. Riebe*, No. 1:17-cr-0014, 2017 U.S. Dist. LEXIS 121312, at *8-10 (W.D. Va. Aug. 2, 2017) (finding that the "contingency fee arrangement with the defendants in the civil matter presents an unwaivable conflict of interest with representing [the defendant] on the related criminal charges.").

In *United States v. Briggs*, the district court analyzed the personal financial interest of a defense attorney who represented a defendant in a criminal case as well as in a related civil lawsuit. *Briggs*, No. 23-cr-644, at *15. The court recognized that the attorney was not receiving an hourly rate in the related civil lawsuit, but rather had a contingency fee arrangement where she could receive over $30 million, one-third of the requested recovery. *Id.* Because the civil case was dependent on the outcome of the criminal case, the attorney was determined to have "a significant personal interest in the outcome." *Id.* This financial interest was subsequently seen to be in direct conflict with the defendant's choice to plead guilty since the attorney sought to withdraw the defendant's prior guilty plea which harmed the related civil case. *Id.*

Similarly, in *United States v. Riebe*, the district court applied the prohibition on contingency fees in criminal cases to a related civil case. *Riebe*, No. 1:17-cr-0014, at *8-10. The court explained that the rules prohibiting contingency fees in a criminal case are important because "an attorney should not acquire a financial interest in a matter adverse to his client." *Id.* The

13

conflict occurs because if the defendant were to plead guilty, "the defendants in the civil case would not recover on their [civil] claim … and [the attorneys] would receive no compensation for their work on the civil case." *Id*. "Their financial interest in the outcome of that case places them in direct conflict with [the defendant's] need to know whether it would be in his best interest to enter a plea of guilty to the charges." *Id.*

Just like in *Briggs* and *Riebe*, Castelluzzo's potential recovery as a claimant in the related civil forfeiture case is similarly dependent on the outcome of this criminal case. Therefore, Castelluzzo's representation in the current criminal case, by Mr. Katz and Ms. Sammis must be evaluated in the greater context of their relationship with Castelluzzo. It would be impossible to make decisions in one case that do not impact the other. The same property is subject to forfeiture in both cases; with the civil case stayed, forfeiture will be decided first in the criminal case. If the government succeeds in forfeiting the assets criminally, the civil case will be dismissed.[3] Alternatively, if this criminal case ends in an acquittal, litigation in the civil case will resume. But, while the civil case is stayed, there is no distinction between counsel's representation in the criminal case and the civil forfeiture matter because they are one and the same. Upon conviction of money laundering, the sole count of the indictment, forfeiture of the assets *at issue in both cases* would be mandatory. *See* 18 U.S.C. § 982(a)(1). Therefore, both counsel have a financial incentive to avoid resolving the criminal case with a guilty plea because it would reduce their recovery in the related civil case. *See Briggs*, No. 23-cr-644, at *15. "Forfeiture cases may be particularly susceptible to conflicts of interest" due to the attorney's financial "incentive to advise a defendant

---

[3] Moreover, a contingency fee arrangement in this criminal case would similarly raise a conflict. *See, e.g., Winkler*, 7 F.3d at 308; *Frank* 2012 U.S. Dist. LEXIS 201003, at *47-48; *Martinez*, 2005 U.S. Dist. LEXIS 42952, at *28-29.

in a manner likely to protect fees—a position which may diverge from the best interests of the defendant." *United States v. Speed Joyeros*, 204 F. Supp. 2d 412, 422 (E.D.N.Y. 2002).

### III.    REQUEST FOR HEARING

Mr. Katz and Ms. Sammis' representation of Castelluzzo in both the civil and criminal cases presents a potential conflict of interest through fee arrangements that could violate Castelluzzo's Sixth Amendment rights or otherwise render a verdict against him subject to challenge.

While the government is aware that civil forfeiture cases are often handled on a contingency basis, an attorney-client relationship must be viewed in its entirety. The facts and circumstances in this case raise questions as to whether the representation violates the letter and the spirit of Rules 1.5(d)(2) and 1.7(a)(2)**.** Because both matters arise out of the same conduct— and any forfeiture will be based on this conduct, whether criminal or civil—any future outcome of the civil case necessarily depends upon the result of the instant, related criminal case.

Therefore, the government requests that the Court conduct a hearing to evaluate the fee arrangements in both the civil and criminal cases and assess any potential conflicts of interest. *See State v. Stribling*, No. A-3592-16T1, 2018 N.J. Super. Unpub. LEXIS 2430, at *16-17 (N.J. Super. Ct. App. Div. Nov. 1, 2018) ("Given the prospect. . . that counsels' representation of defendant was prejudiced in some manner by their financial interest in defendant's civil case and its alleged nexus with the criminal case, and the murkiness of the existing record devoid of any testimony, the matter is best remanded for an evidentiary hearing 'for further exploration of the facts and development of the record.'"). Opportunities for conflict are "notoriously hard to predict, even for those thoroughly familiar with criminal trials." *Wheat*, 486 U.S. at 162-63.  When the potential for a conflict is identified at this early stage of a case, it seems prudent to undertake an inquiry to

allow the Court to address any conflicts and fashion an appropriate remedy. If the Court deems that there is a waivable conflict, this hearing would also be an opportunity to ensure that any such waiver is voluntary, knowing, and intelligent.

## IV.    CONCLUSION

For the foregoing reasons, the government moves for a judicial inquiry concerning the matter and any further relief the Court deems appropriate.

Respectfully,

TODD BLANCHE
U.S Deputy Attorney General

MARGARET A. MOESER
Chief, Money Laundering, Narcotics and Forfeiture Section
U.S. Department of Justice

By:    */s/ Adrienne E. Rosen*
　　　Adrienne E. Rosen
　　　Madison M. Albrecht
　　　Trial Attorneys

ALINA HABBA
Acting United States Attorney
Special Attorney

By:    _____*/s/*_____
　　　Jordan M. Anger
　　　Robert Frazer
　　　Assistant United States Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u>*s/Adrienne E. Rosen*</u>
Adrienne E. Rosen
Trial Attorney

17